UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Dharma P. Agrawal, | Case No. 1:10-cv-766 |
| Plaintiff, | |
| vs. | |
| University of Cincinnati, et al, | |
| Defendants. | |

## ORDER

Before the Court are the motion for summary judgment filed by Defendants Teik Lim and Matt Serra (Doc. 104), and Plaintiff's motion for leave to file an amended complaint. (Doc. 116)  Both motions have been exhaustively briefed and are ripe for a decision by the Court.

## BACKGROUND

Plaintiff, Professor Dharma Agrawal, filed his first amended complaint against the University of Cincinnati, John Bryan, and Carlo Montemagno in the Ohio common pleas court on October 22, 2010.  (Doc. 7)  Professor Agrawal asserted claims under 42 U.S.C. §§1981 and 1983 against Montemagno (former Dean of the School of Engineering) and Bryan (former Assistant Provost of the University).  He also alleged a breach of contract claim against the University.  He sought compensatory and emotional distress damages, punitive damages, attorney's fees, and temporary and permanent injunctive relief, "requiring [Montemagno and Bryan] to cease and desist violating plaintiff's constitutional rights in all respects...".  Doc. 7 at ¶35(1).

This Court initially dismissed all of Plaintiff's claims against the University, finding

that it lacked jurisdiction over his breach of contract claim against the University. (Doc. 13) The parties then engaged in exhaustive discovery, and Montemagno and Bryan moved for summary judgment. (Doc. 84) This Court granted that motion in the October 7, 2013 Order. (Doc. 99) In addressing Plaintiff's Section 1981 claims, this Court held: "While claims for prospective or injunctive relief may be prosecuted under [Section 1981], Dr. Agrawal has sued both Defendants in their individual capacities only. Neither of the Defendants remain at the University of Cincinnati, which moots any prospective claim for relief Dr. Agrawal might assert against either of them." (Doc. 99 at 28) Plaintiff did not seek reconsideration of that conclusion, or file a motion to alter or amend the Order and Judgment.

  Plaintiff appealed the adverse judgment to the Sixth Circuit. In a July 23, 2014 decision, the court of appeals affirmed the dismissal of Plaintiff's claims against the University of Cincinnati, and affirmed the grant of summary judgment to Montemagno and Bryan, except with respect to Plaintiff's Section 1981 injunctive relief claim. The court of appeals held:

> The district court properly determined that money damages are not available under Section 1981; claims for money damages against state officers in their official capacities are barred by the Eleventh Amendment. ... However, the Eleventh Amendment does not bar continuation of a Section 1981 action to the extent it seeks injunctive relief from state officers sued in their official capacities. ... In dismissing the claim for injunctive relief, the district court stated that Agrawal named the individual Defendants only in their individual capacities and went on to conclude that because neither Defendant remains at UC, any prospective claim for relief against them is moot. The district court was mistaken; Agrawal clearly named Montemagno and Bryan both in their individual and official capacities. In addition, Agrawal asserts that the successor officers continue to enforce decisions made by Montemagno and Bryan: that he remains ejected from his laboratory and office, the OCR money remains under another's control, he is still suffering under Bryan's 4-point

> accounting structure, and he is still lacking his merit-pay increase. ... We thus remand for substitution of Montemagno and Bryan's successors and leave to the district court how to proceed on remand.

(Doc. 102, July 23, 2014 Order at 11-12.)

Shortly after the Sixth Circuit's mandate was filed, Defendants Teik Lim and Matt Serra, the successors in office to Montemagno and Bryan, filed their pending motion for summary judgment. (Doc. 104) Lim and Serra argue any claim for injunctive relief is essentially moot. The Sixth Circuit affirmed this Court's decision that Plaintiff had not established a genuine factual dispute concerning his discrimination claims, and that any claims arising from conduct that occurred more than two years before he filed his complaint are time-barred. Defendants also argue that because that conduct was personal to Montemagno and Bryan, there is no continuing discriminatory "policy" to be enjoined. Plaintiff cannot recovery money damages against Lim and Serra under Section 1981; while he styles his claims as seeking injunctive relief, Plaintiff argues that Defendants are "continuing" to deprive him of research funds and a merit pay increase from 2010, claims that clearly seek recovery of money damages in the guise of an "equitable" claim for relief.

In response, Plaintiff moved to stay the case in order to file a certiorari petition with the Supreme Court. (Doc. 105) In that motion, Plaintiff also noted that he had not obtained discovery from the successor Defendants (although Montemagno and Bryan had both left UC long before the Court entered judgment), and suggested the possibility of beginning again with another Rule 26 conference and another round of discovery. Defendants did not oppose a stay, but they firmly objected to any reopening of discovery. They argued that Plaintiff failed to actively prosecute any claim for injunctive

-3-

relief against the newly substituted Defendants, and that he should not get a "second bite at the discovery apple." (Doc. 106)  Montemagno was deposed in October 2012 and testified that he had accepted a new position and was no longer with UC.  Bryan was deposed January 3, 2012, and he also testified that he had also accepted a new position and would be at UC for only a few more days.

The Court granted a stay (Doc. 109).  After Plaintiff's certiorari petition was denied, it ordered Plaintiff to respond to the pending motion for summary judgment.  Plaintiff did so on April 16 (Doc. 113).  He argues that Lim and Serra have "continued" the policies of their predecessors "concerning the alleged discriminatory handling of Agrawal's contract by the University." (Doc. 113 at 3)  He claims that he has not been restored to his office and lab space, the OBR research funds have not been returned to him, and he has not received a 2010 merit pay increase.  His graduate students are monitored and their time sheets must be signed.  He contends that the moving Defendants have tortiously continued the previous discriminatory policies of Montemagno and Bryan, and therefore injunctive relief should be granted.  He signaled his intent to seek leave to amend his complaint to allege claims against the moving Defendants, arguing that the Sixth Circuit "... decided that there was sufficient evidence to submit the Section 1981 case to the fact finder ... ." (Id. at 8)  He argues that because this Court did not dismiss his Section 1981 claim on the merits, as it did with his equal protection claim under Section 1983, he is entitled to a trial.  He further suggests that the "only thing" that could explain the Defendants' continuing failure to adhere to his contract is his brown skin. (Id. at 9)

Plaintiff then filed his motion seeking leave to amend his complaint. (Doc. 116)

-4-

In the proposed second amended complaint, he asserts claims against Montemagno, Bryan, Lim, Serra, the University of Cincinnati, and two fictitious defendants. He repeats many of the allegations that were in his original complaint against Montemagno and Bryan that described the events giving rise to those claims. (See Doc. 116, Ex. 1 at ¶¶6-21.) He further alleges that Dean Lim "made no change in the way Professor Agrawal's contract was being adhered to by the University," in that he did not restore his lab and office space, and did not award Plaintiff the OBR grant and research funds. He alleges that Serra has continued to apply the accounting rules to his graduate students, and that Plaintiff has not received travel reimbursements or committee appointments. He alleges these acts are in retaliation for filing his lawsuit, as well as discrete acts of race and national origin discrimination. (Id. at 23-25) Count One alleges claims under Section 1983 against all Defendants, largely repeating the allegations of his original complaint. Count Two alleges a violation of his Section 1981 rights by Montemagno, Bryan and the University. Count Three re-asserts his long-dismissed breach of contract claim against the University. And Count Four is a new claim for retaliation, in which he alleges that Defendants Lim and Serra knew of the discriminatory conduct by Montemagno and Bryan, and have declined to correct the adverse employment actions they took. He seeks recovery of a panoply of economic damages against all of the Defendants, and temporary and permanent injunctive relief against Lim and Serra.

     Defendants oppose the motion to amend. (Doc. 117) They generally argue that any attempt to reallege claims that have already been dismissed would be futile. They also object to Plaintiff"s apparent intent to pursue claims for money damages against Lim and Serra, as these claims would fail to satisfy the relation-back doctrine of Rule

15(c). Moreover, the proposed amended complaint's allegations are so vague that it is not clear what the basis for the individual claims may be. Defendants contend that Plaintiff's consistent attempts to reargue issues that have already been decided against him should be flatly rejected by this Court.

## DISCUSSION

Standard of Review

The standards that apply to both pending motions are well established. Leave to amend a complaint should be liberally granted "when justice so requires." Fed. R. Civ. Proc. 15(a)(2). The Court has broad discretion to grant or deny a request to amend a complaint. Factors to consider in the exercise of that discretion include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

Defendants' Summary Judgment Motion

Montemagno and Bryan initially moved for summary judgment on April 1, 2013 (Doc. 84). As relevant here, they argued that Section 1981 claims may not be brought against state actors sued in their individual capacity; the exclusive remedy is provided by Section 1983. In responding to the motion, Plaintiff conceded existing case law supported Defendants' arguments, but noted that he was "asking for injunctive relief in regards to Section 1981," which did not merge with his damages claims under Section 1983. (Doc. 90 at 45-46) He then argued that he had produced both direct and circumstantial evidence of race and national origin discrimination that supported both the Section 1981 and 1983 claims. In reply, Defendants did not dispute Plaintiff's right to seek injunctive relief, but argued that he had sued Bryan and Montemagno in their individual capacities, "and neither remains employed by the [University]. ... Further, as no current UC official is party to this action in their official capacity ... there are no viable claims for injunctive relief." (Doc. 96 at 11) As noted above, this Court adopted this argument in granting summary judgment.

But because Plaintiff had in fact alleged claims against Montemagno and Bryan in both their individual and official capacities in his original complaint, the court of appeals remanded the case to this Court on that narrow issue. Contrary to Plaintiff's assertions, the Sixth Circuit did **not** hold that he was entitled to a trial on his official capacity claims, nor did it determine that the Court must reopen discovery. If Plaintiff had brought this error concerning the official capacity allegations to the attention of this Court in a timely fashion, the Court could and would have addressed the question in an amended order and judgment prior to any appeal to the Sixth Circuit. He did not do so,

-7-

even though he knew that Montemagno and Bryan had left UC and been replaced by Lim and Serra before he responded to the first summary judgment motion.  And Plaintiff made no effort before this Court to articulate any legal basis for granting him injunctive relief against Lim and Serra that was separate from the actions of Montemagno and Bryan that he alleged violated his constitutional rights, or intentionally breached his contract with UC.

      Rule 25(d) states that when a public officer sued in an official capacity dies, resigns, or no longer holds the office while an action is pending, "the officer's successor is automatically substituted as a party. ... The court may order substitution at any time, but the absence of such an order does not affect the substitution."  By operation of this Rule, Lim and Serra were automatically substituted as parties to Plaintiff's Section 1981 official capacity claims when Montemagno and Bryan resigned from the University.   If the issue had been squarely presented, the Court would have analyzed Plaintiff's injunctive relief claims against the newly-substituted Defendants on the basis of the briefs and pleadings that were before the Court at that time.  In view of the Court's conclusions that Plaintiff's discrimination and constitutional claims lacked merit, the Court is hard pressed to perceive what injunctive relief Plaintiff would have been entitled to if he had raised the issue at the time of the original judgment.

      After the Sixth Circuit affirmed the Court's conclusions regarding Plaintiff's discrimination claims, Plaintiff now argues that Lim and Serra have "continued" the "policies" imposed by Montemagno and Bryan, and that he is entitled to injunctive relief against those "policies."  He suggests that the Sixth Circuit's decision that any claim about his office and lab space is time barred is "irrelevant" because Lim and Serra

"continue" to fail to restore his space. Because his contract continues to exist, he suggests that each day that Lim and Serra "continue" in their policies of breaching his contract "constitutes a new violation." (Doc. 113 at 10-11)

Plaintiff's arguments appear to conflate the continuing violation doctrine that can apply to Section 1983 claims, and the availability of injunctive relief against ongoing discriminatory policies implemented by state actors. This Court concluded that Plaintiff's complaint arose from a series of discrete actions by Montemagno, Bryan, and other UC personnel, and that the continuing violation doctrine did not apply to resurrect claims based on events that occurred more than two years before he filed his complaint. Plaintiff has repeatedly argued that from the moment Montemagno arrived at UC, he embarked on a personal vendetta against Plaintiff - removing him from his office, reducing his lab space, instituting Article 9 charges under the CBA, and the other incidents recited in Plaintiff's complaint - that was animated by national origin and racial discrimination. This Court has already concluded that Plaintiff's claims of discriminatory treatment, or discriminatory "policies" imposed by Montemagno, lack merit. Similarly, Bryan's grant restrictions and accounting requirements were, according to Plaintiff, the result of discriminatory animus. Those restrictions (what Plaintiff refers to as Bryan's "4-point accounting structure") were part of the 2009 mediation agreement between Plaintiff and UC. The Sixth Circuit affirmed this Court's conclusion that those "restrictions" were not materially adverse actions; the fact that these "restrictions" are continuing does not mean that Plaintiff is being subjected to an ongoing discriminatory "policy" that could merit injunctive relief.

Plaintiff cites Spomer v. Littleton, 414 U.S. 514 (1974), to argue that his injunctive

-9-

relief claims are not moot. That case actually supports the opposite conclusion. Spomer involved a civil rights action against a local state's attorney named Berbling and other public officials. Plaintiffs alleged that Berbling refused to prosecute white people who threatened or committed crimes against African-American people, and other racially discriminatory policies. Plaintiffs sought an injunction against these practices and asked the district court to maintain continuing jurisdiction to enforce the injunction. The district court dismissed both lawsuits on the basis of official immunity without reaching the merits. The court of appeals reversed, finding that some form of injunctive remedy might be available if plaintiffs could prevail in establishing their discrimination claims. A month later, Berbling was defeated in an election and a new state's attorney (Spomer) took office. Spomer then sought certiorari review of the appeals court's order, substituting himself for Berbling pursuant to Supreme Court Rule 48 (analogous to F.R.C.P. 25). The Supreme Court granted certiorari, and held that there was nothing in the record suggesting that a concrete controversy between plaintiffs and Spomer existed, because "the wrongful conduct charged in the complaint is personal to Berbling, despite the fact that he was also sued in his then capacity as State's Attorney. No charge is made in the complaint that the policy of the office of State's Attorney is to follow [Berbling's] intentional practices ...". The Court remanded the matter to the Court of Appeals "for a determination, in the first instance, of whether the former dispute regarding the availability of injunctive relief against the State's Attorney is now moot and whether [plaintiffs] will want to, and should be permitted to, amend their complaint to include claims for relief against [Spomer]." Id. at 522-523.

      As is clear from the Supreme Court's opinion in Spomer, the merits of the

plaintiffs' claims of intentional and willful racial discrimination and request for injunctive relief had never been addressed by any court. The mootness issue arose because it was not known if the successor attorney would continue the challenged policies of his predecessor. Here, in contrast, after extensive discovery and briefing, this Court granted summary judgment on the merits of Plaintiff's claims, and the Sixth Circuit affirmed that decision. Therefore, contrary to Plaintiff's suggestions, the Court can discern no ongoing discriminatory "policy" that Lim and/or Serra are "enforcing," by "continuing to deny" Plaintiff the office space he desires; from "continuing" to refuse to restore the Regents' funds (which are no longer available in any event); from "continuing" to enforce the grant accounting and reporting requirements that Plaintiff agreed to in 2009; or by "continuing" to fail to award him a 2010 merit pay increase. Plaintiff's discrimination claims lack merit, and his request for injunctive relief against non-existent discriminatory "policies" is therefore moot.

<u>Leave to Amend</u>

To the extent that Plaintiff's motion for leave to amend is not moot by granting summary judgment to Lim and Serra, the Court also concludes that Plaintiff's motion should be denied.

Plaintiff's proposed complaint apparently seeks to resurrect his claims against Montemagno and Bryan under Section 1981 and 1983. Res judicata bars that attempt. The same is true with respect to his restated breach of contract claim against UC. Plaintiff's motion for leave to re-allege these claims is denied as futile, as these claims have already been decided adversely to Plaintiff. Moreover, with respect to his claim against UC, Plaintiff filed a breach of contract lawsuit against UC in the Ohio common

pleas court, which was dismissed for lack of subject matter jurisdiction. The First District Court of Appeals affirmed, finding that the Ohio Court of Claims has exclusive subject matter jurisdiction over claims for money damages that sound in law. It rejected Plaintiff's arguments that he is seeking "equitable relief" in the form of "reinstatement" of $360,000 in OBR research funds.[1] This is further support for the conclusion that Plaintiff's attempt to resurrect his breach of contract claim in this Court is futile.

Plaintiff's proposed amended complaint apparently seeks leave to add claims against Lim and Serra in their personal capacities. Paragraph 27 alleges that "Defendants" (presumably all of them) are sued individually and in their official capacities. It also alleges that "Defendants" have engaged in a "pattern and practice of discrimination," but does not specifically allege any discriminatory acts taken by either Lim or Serra, aside from alleging that they have "continued" the discriminatory practices of Montemagno and Bryan. He further alleges that Lim and Serra "knew" about the discriminatory conduct of Montemagno and Bryan, but "declined" to correct the adverse employment actions to retaliate against Plaintiff. Plaintiff fails to allege any specific acts or conduct by Lim or Serra that could plausibly support an individual claim against either of them. He simply realleges his claims against Montemagno and Bryan, and asserts that Lim and Serra have failed to end their alleged discriminatory treatment. As the Court already found, the discrimination claims have been decided against Plaintiff; alleging that Lim and Serra have failed to end non-existent discriminatory "policies"

---

[1] Agrawal v. University of Cincinnati, unpublished judgment entry, First District Court of Appeals, (Doc. 115, Ex. 1). Plaintiff has filed a petition for review of that decision by the Ohio Supreme Court.

would be futile.

Plaintiff also suggests that his complaint relates back to his original complaint under Fed. R. Civ. Proc. 15(c). Numerous cases make it clear that an amendment to add a new party "creates a new cause of action and there is no relation back to the original filing for purposes of limitations." Asher v. Unarco Material Handling, Inc., 596 F.3d 313, 318 (6th Cir. 2010)(internal citations omitted). At the time Plaintiff was deposed in this case, he was fully aware that Montemagno and Bryan had left the University, and that Lim and Serra were their official replacements. While they are automatically substituted as defendants in Plaintiff's official capacity claims, the proposed claims alleged against them individually are time-barred.

## CONCLUSION

Plaintiff's arguments regarding both of the pending motions attempt to avoid the legal consequences of the Sixth Circuit's decision affirming this Court's judgment. He essentially seeks to begin this lawsuit anew. The authorities he cites simply do not permit him to do so.

Therefore, for all of the foregoing reasons, Defendants Tek Lim and Matt Serra's motion for summary judgment (Doc. 104) is granted. Plaintiff's claims under 42 U.S.C. §1981 against those Defendants in their official capacities are dismissed with prejudice. Plaintiff's motion for leave to file a second amended complaint (Doc. 116) is denied.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: July 7, 2015    s/Sandra S. Beckwith
Sandra S. Beckwith, Senior Judge
United States District Court